IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOSE AYALA CRESPIN, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-140 |
| | ) | |
| MARY YVONNE EVANS, | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

The primary question presented by this habeas corpus immigration petition is whether the government's detention of an illegal alien for ten months pursuant to a reinstated order of removal violates the Due Process Clause where the alien's application for relief under the Convention Against Torture remains pending before the immigration judge following the government's successful appeal to the Board of Immigration Appeals, which vacated the initial grant of relief and remanded the matter for a new relief determination. The resolution of this question turns on which of two statutes governs petitioner's detention: (1) Immigration and Nationality Act ("INA") § 236 (8 U.S.C. § 1226), which governs detention for aliens pending a decision on their removal, or (2) INA § 241 (8 U.S.C. § 1231), which governs detention for aliens who have been ordered removed. The text and structure of the INA point convincingly to the conclusion that petitioner is subject to 8 U.S.C. § 1231(a), which means that his detention must be analyzed under the framework established by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Under this analytical framework, petitioner's detention currently does not violate the Due Process Clause, though circumstances may arise in the future that would require release or a bond hearing under the Fifth Amendment.

# I.

The facts in this case are straightforward and undisputed. Petitioner Jose Ricardo Ayala Crespin is a native and citizen of El Salvador. He seeks a writ of habeas corpus under 28 U.S.C. § 2241[1] against respondent United States Immigration and Customs Enforcement ("ICE"),[2] which is currently detaining petitioner.

Petitioner entered the United States illegally and without inspection at an unknown place on an unknown date. In November 2012, he pled guilty in the Circuit Court of Fairfax County, Virginia to possession of cocaine, a felony under Virginia law.[3] Respondent then issued petitioner a Notice to Appear in February 2014, charging him as removable (i) as an illegal alien under 8 U.S.C. § 1182(a)(6)(A)(i) and (ii) as an alien convicted of violating a law relating to a controlled substance under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Petitioner was released into respondent's custody that same month as an alien subject to mandatory detention due to his state cocaine conviction. In March 2014, petitioner appeared, represented by counsel, before the immigration court in Arlington, Virginia for a hearing. Petitioner admitted to the charges in the Notice to Appear, conceded his removability, declined to seek relief from removal, and accepted a removal order (the "2014 removal order"). The immigration judge ordered his removal to El Salvador, petitioner waived his appeal, and respondent removed petitioner to El Salvador in April 2014.

---

[1] The Supreme Court has made clear that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688.

[2] The named respondent is Mary Yvonne Evans, Field Office Director for the Washington Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement.

[3] *See* Va. Code § 18.2-250.

Despite his removal, petitioner again entered the United States illegally and without inspection at an unknown place and on an unknown date. In May 2016, respondent arrested petitioner and turned him over to the United States Marshals. Petitioner pled guilty to reentry of a removed alien in violation of 8 U.S.C. § 1326(a)(1), (b)(1) and was sentenced to 90 days incarceration. *See United States v. Crespin*, No. 1-16-cr-94 (E.D. Va. June 20, 2016). During petitioner's incarceration, respondent reinstated his 2014 removal order under 8 U.S.C. § 1231(a)(5).[4] Upon his release from prison, petitioner was transferred to respondent's custody on August 3, 2016.[5]

Following his transfer to respondent's custody, petitioner expressed fear at the prospect of returning to El Salvador. Under the INA, when an alien, like petitioner, who is subject to a reinstated removal order expresses fear of returning to the country of removal, a United States Citizenship and Immigration Services ("USCIS") officer must interview the alien to determine if the alien has a "reasonable fear" of persecution or torture. *See generally* 8 C.F.R. § 1208.31. As a result, a USCIS officer interviewed petitioner. The officer determined that petitioner had a reasonable fear of returning to El Salvador, and the matter was referred to an immigration judge to determine if petitioner's removal should be withheld or deferred under the INA and the

---

[4] Section 1231(a)(5) provides that if the "Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

[5] Petitioner asserts that he has been in custody since July 19, 2016, but his immigration detainer was issued on July 15, 2016, and he was not released from prison into respondent's custody until August 3, 2016. (Resp't Exs. 7, 9). In any event, the difference between July 19, 2016 and August 3, 2016 is immaterial for determining whether petitioner's detention violates due process.

Convention Against Torture ("CAT"). *See* 8 C.F.R. § 1208.31(e),(g).[6] Petitioner, represented by counsel, also filed an application for asylum and withholding of removal.

After holding a hearing on the merits of withholding or deferring petitioner's removal, the immigration judge issued a decision in January 2017. The immigration judge denied petitioner's request for withholding of removal under the INA and the CAT because he had committed serious nonpolitical crimes in El Salvador due to his membership in the MS-13 gang. *See* 8 C.F.R. § 1208.16(d)(2); *see also* 8 U.S.C. § 1231(b)(3)(B). As for petitioner's request for deferral of removal under the CAT, the immigration judge concluded that petitioner had established that it was more likely than not that he would be tortured if removed to El Salvador. *See* 8 C.F.R. § 1208.16(c)(2). As a result, the immigration judge granted petitioner's request for deferral of removal under the CAT. In January 2017, respondent appealed that decision to the Board of Immigration Appeals ("BIA").

While petitioner's case worked through the immigration court, deportation officers conducted two assessments, or "Post Order Custody Reviews" ("POCR"), to determine whether petitioner should remain in detention. Respondent conducted the first POCR on October 19, 2016. The deportation officer recommended that petitioner remain in custody pending the resolution of his case because of the significant likelihood of petitioner's removal and his designation as an enforcement priority. Petitioner was informed of this decision on November 15, 2016. On January 30, 2017, soon after respondent appealed the immigration judge's decision

---

[6] An alien qualifies for withholding of removal if he can establish that it is more likely than not that he would face persecution based on his race, religion, nationality, membership in a particular social group, or political opinion if returned to his proposed country of removal. *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004) (quotation marks omitted). An alien receives deferral of removal if he can show that it is more likely than not that he will be tortured if "removed to the proposed country of removal." *Saintha v. Mukasey*, 516 F.3d 243, 246 (4th Cir. 2008) (quotation marks omitted).

4

to the BIA, respondent conducted another POCR. ICE Headquarters Removal and International Operations determined on February 2, 2017 that continued detention was appropriate due to respondent's pending appeal of the immigration judge's decision, and petitioner was informed of this decision on February 7, 2017. Petitioner remains in detention at the Farmville Detention Center in Farmville, Virginia. There are no obstacles to removing petitioner to El Salvador if his deferral of removal is ultimately denied. In particular, ICE is routinely able to obtain travel documents from El Salvador's government, and as a result ICE believes that it will be able to obtain such documents for petitioner. ICE also represents that there are no diplomatic barriers that would prevent petitioner's removal to El Salvador.

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on February 1, 2017, alleging that his ten-month detention violates the Fifth Amendment's Due Process Clause. He seeks either release or a bond hearing before an immigration judge. Respondent has moved for summary judgment on the petition, contending that petitioner's detention does not violate the Due Process Clause. After respondent filed its motion for summary judgment and the parties submitted their respective briefs, respondent provided notice of the BIA's May 22, 2017 decision sustaining respondent's appeal, vacating the immigration judge's deferral of removal, and remanding the record to the immigration judge for a new decision on the merits of petitioner's application for deferral of removal.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A "fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (internal

quotation marks omitted). A "dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). The movant bears the burden of showing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the non-moving party, to defeat the motion, must set forth specific facts showing that there is a genuine issue for trial. *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 436 (4th Cir. 2007). The facts must be construed "in the light most favorable" to the non-movant, and all reasonable inferences must be drawn in the non-movant's favor. *Vannoy*, 827 F.3d at 300. Only "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.

Two statutes — 8 U.S.C. § 1226 and 8 U.S.C. § 1231 — govern the detention of aliens. Petitioner's entitlement to release or a bond hearing turns on which statute governs his detention because the statutes prescribe different procedures for detained aliens. *See Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016).

The first statute — 8 U.S.C. § 1226 — governs the procedures for detaining an alien before a removal decision. Specifically, § 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The statute further states that the Attorney General "may release the alien on" bond or conditional parole pending a removal decision. *Id.* § 1226(a)(1)–(2).[7] The second statute — 8 U.S.C.

---

[7] Section 1226(c) provides that the Attorney General "shall take into custody any alien who is inadmissible by reason of having committed any offense covered in" 8 U.S.C. § 1182(a)(2). *Id.* § 1226(c)(1)(A). Petitioner is subject to § 1226(c)'s mandatory detention provision because of his state cocaine conviction. *See id.* § 1182(a)(2)(A)(i)(II). Although § 1226(c) is an exception

§ 1231 — governs the detention of aliens following a removal decision and does not contain a provision for bond hearings. The statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The statute further provides that "[d]uring the removal period, the Attorney General shall detain the alien," and aliens, like petitioner, who are inadmissible under 8 U.S.C. § 1182 "may be detained beyond the removal period." *Id.* § 1231(a)(1)(2), (a)(6). The removal period begins on the "date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B).

The parties' dispute concerning which statute applies to petitioner's detention focuses on whether petitioner's reinstated removal order is "administratively final" within the meaning of § 1231(a) given petitioner's ongoing withholding-only proceedings. Under § 1231(a)(5), if an alien, like petitioner, illegally reenters the United States after having been removed under a prior removal order, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed" and the alien must be removed. 8 U.S.C. § 1231(a)(5).[8] Despite the bar on reopening or reviewing the reinstated removal order, aliens subject to reinstated removal orders may nonetheless seek withholding or deferral of removal under the INA and the

---

to the Attorney General's power to release an alien on bond or conditional parole pending a removal decision, most courts have concluded "that mandatory civil detention of criminal aliens under § 1226(c) is constitutional for a reasonable period of time to complete removal proceedings, but . . . at some point such detained aliens become entitled to an individualized bond hearing." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1202, 1214 (11th Cir. 2016) (citing decisions from the First, Second, Third, Sixth, and Ninth Circuits). Given the conclusion, *infra*, that § 1231 applies to this petitioner's detention, it is unnecessary to address precisely when an alien should receive a bond hearing under § 1226(c).

[8] *See also* 8 C.F.R. § 241.8 ("An alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order.").

7

CAT if the alien "expresses a fear of returning to the country designated in that order." 8 C.F.R. § 241.8(e). Where the alien expresses such a fear, an immigration officer interviews the alien to determine if the alien "has a reasonable fear of persecution or torture." *Id.* If the officer determines that the alien has expressed a reasonable fear of persecution or torture, the matter is referred to an immigration judge for "withholding-only" proceedings, where the "scope of review" is "limited to a determination of whether the alien is eligible for withholding or deferral of removal" and "all parties are prohibited from raising or considering any other issues. *Id.* § 1208.2(c)(3)(i); § 208.31(e). If the alien shows that it is more likely than not that the alien will suffer persecution or torture in the country of removal, the immigration judge must withhold deportation. *Id.* § 208.16(d)(1). Where, as here, the immigration judge determines that the alien is not entitled to withholding of removal[9] but is entitled to relief under the CAT, the immigration judge must defer the alien's removal to the proposed country of removal. *Id.* § 208.17(a). The alien can still be removed, however, to a third country where the alien does not face a reasonable risk of persecution or torture. *Id.* § 208.16(f). Appeals from the immigration judge's decision are taken to the BIA, and then to the court of appeals. 8 U.S.C. § 1252(b); 8 C.F.R. § 208.31(e).

Petitioner contends that his ongoing withholding-only proceeding means that a decision with respect to his removal remains "pending" under § 1226, and accordingly his reinstated removal order is not administratively final under § 1231(a). In support of this contention, petitioner relies exclusively on the Second Circuit's decision in *Guerra v. Shanahan*, 831 F.3d 59, 61 (2d Cir. 2016), which also involved an alien detained under a reinstated order of removal

---

[9] Petitioner is subject to mandatory denial of withholding of removal because the immigration judge concluded that there is serious reason to believe that petitioner committed a serious nonpolitical crime outside the United States due to his activities with MS-13. 8 U.S.C. § 1231(b)(3)(B)(iii).

8

during the pendency of withholding-only proceedings.[10] There, the Second Circuit concluded that § 1226 governed the alien's detention for three reasons. *Id.* at 62–63. First, the court determined that the text of § 1226(a), which permits detention of aliens "pending a decision on whether the alien is to be removed from the United States," does not "speak to the case of whether the alien is theoretically removable but rather to whether the alien will actually be removed." *Id.* at 62. The court reasoned that although an alien subject to a reinstated removal order is "clearly removable," the "purpose of withholding-only proceedings is to determine precisely whether 'the alien is to be removed from the United States,'" and as such § 1226 applies pending that ultimate withholding decision. *Id.* (quoting 8 U.S.C. § 1226(a)). Second, the court determined that the structure of §§ 1226 and 1231 supported its conclusion, because § 1226 governs detention for aliens whose removal proceedings are ongoing, while § 1231 "is concerned mainly with defining the 90-day removal period during which the Attorney General 'shall remove the alien.'" *Id.* at 62–63 (quoting 8 U.S.C. § 1231(a)). Third and finally, the court reasoned that reinstated removal orders are non-final for purposes of detention because such orders are also considered non-final for purposes of judicial review. *Id.* at 63. Petitioner adopts these three arguments to argue that his detention is also governed by § 1226.

The Second Circuit's *Guerra* decision is unpersuasive, and hence so are petitioner's arguments. With respect to the text of § 1226(a), the Supreme Court has made clear that "in all statutory construction cases, we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose." *Marx v. Gen. Revenue Corp.*, 568 U.S. ___, 133 S.

---

[10] The Second Circuit is the only circuit that has addressed the precise issue presented in this case — whether "a reinstated removal order is 'administratively final' during the pendency of withholding-only proceedings." *Guerra*, 831 F.3d at 62. The district courts that have addressed this issue are split. *See Padilla-Ramirez v. Bible*, 180 F. Supp. 3d, 701 n.1 (D. Idaho 2016), *appeal filed Padilla-Ramirez v. Bible*, No. 16-35385 (9th Cir. 2016) (collecting cases).

Ct. 1166, 1172 (2013) (quotation marks and brackets omitted). Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The ordinary meaning of a "pending" decision is one that is "not yet decided." Webster's Third New International Dictionary 1669 (1993). Pursuant to that ordinary meaning, "there is no 'pending' decision regarding removal" for an alien subject to a reinstated removal order because the decision "has been made." *Padilla-Ramirez v. Bible*, 180 F. Supp. 3d 697, 701 (D. Idaho 2016), *appeal filed Padilla-Ramirez v. Bible*, No. 16-35385 (9th Cir. 2016). The plain text of § 1226(a) creates no distinction between aliens who are "theoretically removable" under a reinstated removal order but not "practically" removable due to ongoing withholding-only proceedings, and it is inappropriate to read such a distinction into the statutory text. *See, e.g., Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function.").[11] Indeed, no such distinction can exist: An alien who is theoretically removable due to a reinstated removal order is also practically removable because, as the Second Circuit itself has recognized, "withholding of removal is a country-specific form of relief, *i.e.*, it bars removal to the nation of persecution, but it does not prevent exclusion and deportation to a hospitable third country." *Huang v. I.N.S.*, 436 F.3d 89, 95 (2d Cir. 2006).[12] And because withholding is country-specific, even if the alien succeeds in having removal withheld or deferred, "the reinstated removal order is not vacated or withdrawn; only its execution to the alien's home country is withheld." *Reyes v. Lynch*, No. 15-cv-442, 2015 WL

---

[11] *See also Ebert v. Poston*, 266 U.S. 548, 554 (1925) ("A *casus omissus* does not justify judicial legislation."). The Second Circuit provided no authority whatsoever for its assertion that there is a distinction between being "theoretically" removable and "practically" removable under the statute. *See Guerra*, 831 F.3d at 62.

[12] *See also* 8 C.F.R. § 208.16(f).

5081597, at *1 (D. Colo. Aug. 28, 2015). Because withholding-only proceedings do nothing to alter or eliminate the underlying removal order, § 1231, which applies to aliens who have been "ordered removed," applies to aliens subject to reinstated removal orders. *See Padilla-Ramirez*, 180 F. Supp. 3d at 701 (noting that because aliens subject to reinstated removal orders have already been ordered removed, § 1231 logically applies to such aliens). As a result, the alien's removal is not a "pending" decision because his removability has necessarily been decided, which means that § 1226 does not apply to aliens subject to reinstated removal orders.

In addition to the text of § 1226(a), the structural features of §§ 1226 and 1231 support the conclusion that § 1231 governs petitioner's detention. *See Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (noting that structure is a tool of "divining meaning" in statutes). To begin with, the "order in which the statutes are set forth indicates that § 1226 does not apply to aliens who have already been ordered removed." *Barrera-Romero v. Cole*, No. 1-16-cv-148, 2016 WL 7041710, at *4 (W.D. La. Aug. 19, 2016) (report and recommendation), *adopted Barrera Romero v. Warden*, No. 1-16-cv-148, 2016 WL 7041614 (W.D. La. Dec. 1, 2016). As the *Barrera-Romero* court observed, § 1226 "precedes the sections governing removal proceedings," which "indicat[es] that it applies to pre-removal order detention." *Id.* Section 1231, however, "follows the sections governing removal proceedings, indicating that it applies to post-removal order detention." *Id.* Furthermore, § 1231 is titled "[d]etention and removal of aliens ordered removed," which indicates that the statute applies to all aliens, such as those subject to reinstated removal orders, who have already been ordered removed. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (quotation marks omitted). Finally, the placement of § 1231(a)(5), which governs reinstated

11

removal orders, within § 1231 itself supports the conclusion that reinstated removal orders are subject to the detention provisions of § 1231. *See Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 439 (2011) (looking at a section's placement within a statute to interpret its meaning). Taken together, all of these structural features provide additional support for the conclusion that § 1231 controls the detention of aliens subject to reinstated removal orders.

Petitioner's final argument is that reinstated removal orders are non-final under § 1231 during the pendency of withholding-only proceedings because several courts have held that such orders are non-final for purposes of judicial review while withholding-only proceedings remain pending. *See, e.g. Ortiz-Alfaro v. Holder,* 694 F.3d 955, 958 (9th Cir. 2012) (holding that "where an alien pursues reasonable fear and withholding of removal proceedings following the reinstatement of a prior removal order, the reinstated removal order does not become final until the reasonable fear of persecution and withholding of removal proceedings are complete").[13] This argument erroneously conflates finality for purposes of judicial review with finality for purposes of detention. The reason courts have concluded that reinstated removal orders are non-final for purposes of judicial review while withholding-only proceedings are ongoing stems from the fact that aliens cannot appeal the reinstated order to the BIA, but can appeal a denial of withholding. *Luna-Garcia,* 777 F.3d at 1184. As a result, these courts' decisions hinged on how the opposite conclusion — that reinstated removal orders become final on the date of

---

[13] *See also Ponce-Osorio v. Johnson,* 824 F.3d 502, 507 (5th Cir. 2016) (concluding that reinstated removal orders are non-final for purposes of judicial review while removal proceedings are ongoing); *Luna-Garcia v. Holder,* 777 F.3d 1182, 1186 (10th Cir. 2015) (same). These decisions did not address the specific issue presented in this case, namely whether a reinstated removal order is administratively final for purposes of detention. *See Guerra,* 831 F.3d at 62 n.1 (noting that *Ortiz-Alfaro* and *Luna-Garcia* did not address this issue); *see also Ponce-Osorio,* 824 F.3d at 504.

reinstatement, thus triggering the 30-deadline for judicial review[14] — would deprive aliens of the opportunity to seek judicial review of the immigration judge's withholding or deferral decision, which will come after the 30-day appeal deadline. *See id.* at 958 ("Concluding that the reinstated removal order is final . . . would make it impossible [for the alien] to timely petition for review of any . . . decisions denying him relief or finding that he does not have a reasonable fear.").[15] Importantly, however, finality for purposes of detention is different from finality with respect to judicial review because whether an alien is detained under § 1226 or § 1231 has no bearing on his ability to seek judicial review of a withholding decision. As one court has concluded, "[a]lthough a reinstated removal order is not final for purposes of judicial review where there are ongoing proceedings such as withholding of removal . . . such proceedings do not affect the finality of a reinstated removal order for purposes of resolving issues of detention." *Barrera-Romero*, 2016 WL 7041710 at *4.[16] As a result, this argument is unpersuasive.

---

[14] 8 U.S.C. § 1252(b)(1). This 30-day deadline for appealing a final order is "mandatory and jurisdictional." *Ortiz-Alfaro*, 694 F.3d at 958; *see also Luna-Garcia*, 777 F.3d at 1185 (same).

[15] *See also Ponce-Osorio*, 824 F.3d at 505, 507 (concluding that reinstated removal orders are non-final while withholding-only proceedings remain pending, because a contrary conclusion would not only "completely preclude[] judicial review for [the alien]" because of the mandatory 30-day filing deadline, but also "undermine judicial efficiency by possibly requiring several separate petitions for review rather than a single consolidated decision").

[16] Petitioner, relying on *Guerra*, argues that bifurcating judicial finality and administrative finality "runs counter to principles of administrative law." *Guerra*, 831 F.3d at 63. In particular, petitioner argues that an agency action is final only if the action "mark[s] the consummation of the agency's decisonmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (quotation marks omitted). Citing those principles, petitioner argues that pending withholding-only proceedings render a reinstated removal order non-final because respondent has not consummated a final decision, and there are no legal consequences of the reinstated removal order because the respondent cannot remove the alien to the proposed country while the proceedings remain pending. For the reasons stated above, however, this argument is unconvincing. The reinstatement of a removal order is final insofar as it reflects respondent's

13

In sum, the text and structure of §§ 1226 and 1231 show that reinstated removal orders are "administratively final" under § 1231 because the alien is not awaiting a "pending" decision with respect to his removability. The fact that reinstated removal orders are non-final for purposes of judicial review does not change this conclusion.[17] Finally, it is worth noting that common sense[18] supports this conclusion as well: Illegal aliens who have already been ordered removed should not be subject to the same procedures as those awaiting their first removal decision. Thus, a conclusion in this case that § 1226 governs the detention of aliens subject to reinstated removal orders would give such aliens the same rights as aliens who have illegally entered the country only once and are facing removal proceedings for the first time.[19] This is not petitioner's first brush with immigration law: He has illegally entered this country two times, and two wrongs do not give him a right to the more lenient detention procedures of § 1226.

---

final decision that petitioner is removable from the United States and creates the legal consequence that petitioner is removable. And because withholding-only proceedings are separate from removal proceedings, even if petitioner succeeds in having his removal deferred the underlying removal order remains unaffected. *See Matter of I-S- & C-S-*, 24 I & N Dec. 432, 433 (BIA 2008) ("It is axiomatic that in order to withhold removal there must first be an order of removal that can be withheld.").

[17] Respondent also argues that several Department of Homeland Security regulations are entitled to *Chevron* deference, compelling the conclusion that § 1231(a) applies to petitioner's detention. This argument fails, for as the Second Circuit correctly pointed out in *Guerra*, "*Chevron* deference is inapplicable [here] because the regulations do not answer the question of which provision governs" petitioner's detention. *Guerra*, 831 F.3d at 63.

[18] *See Abramski*, 134 S. Ct. at 2267 (noting that "common sense" is a tool of "divining meaning" in statutes).

[19] *See Reyes*, 2015 WL 5081597 at *4 (noting that aliens subject to reinstated removal orders would "attain[] greater rights (in terms of potential freedom to avoid detention)" if subject to § 1226).

## IV.

Because § 1231 governs petitioner's detention, the next issue is whether he is entitled to release or a bond hearing under that statute. Section 1231 does not contain any requirement for a bond hearing, and thus raises the question of whether respondent can detain petitioner indefinitely. The Supreme Court addressed this precise issue in *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), concluding that indefinite detention under the INA would present a "serious constitutional problem" under the Fifth Amendment's Due Process Clause. As a result, the Supreme Court limited "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and held that the statute "does not permit indefinite detention." *Id.* In particular, the Court recognized that a six-month detention was "presumptively reasonable" and then defined a test for determining the constitutionality of detention after that six-month period:

> After this [six-month] period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This [six-month] presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. Petitioner, having been in respondent's custody for about ten months, is beyond the presumptively reasonable six-month period of detention. He accordingly seeks release or a bond hearing, arguing that there is no significant likelihood of removal in the reasonably foreseeable future because (i) he has already been granted relief from removal and (ii) respondent is unlikely to succeed in its appeal of the immigration judge's deferral decision. This argument fails.

To begin with, the BIA's recent decision on May 22, 2017 vacating the immigration judge's deferral decision and remanding for a new deferral determination substantially weakens petitioner's arguments because, at this point, his removal is no longer deferred. Even before the BIA's decision, however, petitioner's arguments would have still failed. Petitioner is unlike the aliens detained in *Zadvydas*, who were left in a "removable-but-unremovable limbo"[20] because one was not a recognized citizen of any country and the other could not be removed to the proposed country of removal due to the lack of a repatriation treaty with that country. *See id.* at 684–86.[21] Because of the aliens' status, "it was unlikely that the government would be able to successfully remove [the aliens] even when all the legal issues surrounding their eligibility for removal had been resolved." *Euceda v. Evans*, No. 1:17-cv-256, 2017 WL 1534197, at *5 (E.D. Va. Apr. 24, 2017) (slip copy). In this case, however, petitioner is a citizen of El Salvador and it is undisputed that there are no diplomatic barriers to his removal, which means that the "ordinary delays associated with processing [his] claim for withholding . . . [does] not normally trigger the concerns raised in *Zadvydas*." *Id.*[22] Finally, even if the BIA had not vacated the immigration

---

[20] *Jama v. ICE*, 543 U.S. 335, 347 (2005).

[21] Specifically, one alien in *Zadvydas* was a resident alien born to Lithuanian parents in a displaced persons camp in Germany in 1948; Germany refused to accept him because he was not a German citizen, Lithuania refused to accept him because he was neither a Lithuanian citizen nor a permanent resident, and the Dominican Republic (his wife's country) refused to accept him. *Zadvydas*, 533 U.S. at 684.

[22] *See also Castellanos v. Holder*, 337 F. App'x 263, 268 (3d Cir. 2009) (unpublished) (concluding that alien's detention was not "indefinite" under *Zadvydas* because he was not stuck in a removable-but-unremovable limbo and his detention would end upon the completion of removal proceedings); *Mancera v. Kreitzman*, No. 16-cv-89, 2016 WL 1249600, at *4 (E.D. Wis. Mar. 29, 2016) ("And although the withholding-only proceedings — initially, on appeal, on remand, and now again on appeal — have taken a significant amount of time, this is simply not a case in which removal is no longer practically attainable as in *Zadvydas*.") (quotation marks omitted); *Khemlal v. Shanahan*, No. 14 civ. 5186, 2014 WL 5020596, at *5 (S.D.N.Y. Oct. 8,

16

judge's grant of deferral, respondent remains removable under his reinstated removal order because respondent could seek to remove him to a third country. Respondent therefore has a continued interest in detaining him while withholding-only proceedings remain pending. *See Zadvydas*, 533 U.S. at 699 (stating that habeas courts "must ask whether the detention in question exceeds a period reasonably necessary to secure removal," and that the court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal").

In sum, petitioner has failed to show that there is no significant likelihood of removal in the reasonably foreseeable future. He has been detained only four months beyond the presumptively reasonable six-month period, respondent has succeeded on its appeal before the BIA, and now the immigration judge must decide anew whether petitioner is entitled to relief under the CAT. Of course, in the event this withholding-only proceeding takes an unusually long period of time, petitioner's continued detention may present a due process problem. *See Tijani v. Willis*, 430 F.3d 1241, 1242–43 (9th Cir. 2005) (granting writ to alien detained for two years and eight months while awaiting removal decision). But at this time, the petition is appropriately denied without prejudice to the filing of a future petition should circumstances warrant.

---

2014) ("Although [the alien's] detention has been lengthy, it is not indefinite in the sense that concerned the Supreme Court in *Zadvydas*, as he will ultimately be removed to Guyana if his application for withholding is denied, or removed elsewhere if he prevails.").

17

## V.

For the foregoing reasons, petitioner's request for release or a bond hearing is denied without prejudice.

An appropriate order will issue.

Alexandria, Virginia
May 31, 2017

/s/ 
T. S. Ellis, III
United States District Judge